UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -X
                        :

UNITED STATES OF AMERICA      :
                        :     **SEALED INDICTMENT**

  - v. -               :
                        :

GEORGE CONSTANTINE,       :
MARC ELEFANT,             :     21 Cr. ____
ANDREW DOWD, and         :
SADY RIBEIRO,             :

             Defendants.  :  **21 CRIM 530**
                        :
- - - - - - - - - - - - - - - - - - -X

## COUNT ONE
### (Conspiracy to Commit Mail and Wire Fraud)

The Grand Jury charges:

**I.   Overview**

    1.   From at least in or about January 2013, up to and including in or about April 2018, in the Southern District of New York and elsewhere, GEORGE CONSTANTINE, MARC ELEFANT, ANDREW DOWD, and SADY RIBEIRO, the defendants, together with others known and unknown, carried out an extensive mail and wire fraud scheme through which the defendants defrauded businesses and insurance companies by staging trip-and-fall accidents and filing fraudulent lawsuits arising from those staged trip-and-fall accidents (the "Fraud Scheme" or "Scheme"). In or about 2015, certain members of the Fraud Scheme split from the original conspiracy and formed a separate conspiracy that

operated in substantially the same manner.  The Fraud Scheme
generally operated as set forth below, *see infra* ¶¶ 2-14.

## II.  **Staged Accidents**

2.    Fraud Scheme participants recruited individuals (the
"Patients") to stage or falsely claim to have suffered trip-and-
fall accidents at particular locations throughout the New York
City area (the "Accident Sites").  In the course of the Fraud
Scheme, Scheme participants recruited more than 400 Patients.
In the beginning of the Fraud Scheme, Scheme participants would
instruct Patients to claim they had tripped and fell at a
particular location, when in fact the Patients had suffered no
such accident.

3.    Eventually, at the direction of the lawyers who filed
fraudulent lawsuits on behalf of the Patients, Scheme
participants began to instruct Patients to stage trip-and-fall
accidents, i.e., to go to a location and deliberately fall.  The
reason for this change was to ensure that the Patients would be
transported to the hospital via ambulance and obtain ambulance
reports, thereby making their fake accidents appear more
legitimate.  Common Accident Sites used during the Fraud Scheme
included cellar doors, cracks in concrete sidewalks, and
purported "potholes."

### III. **Filing of Fraudulent Lawsuits**

4.    After the Patients staged their trip-and-fall accidents, or falsely claimed to have suffered such accidents, members of the Fraud Scheme referred the Patients to one of several lawyers (the "Lawyers"), including GEORGE CONSTANTINE and MARC ELEFANT, the defendants.  The Lawyers commenced personal injury lawsuits (the "Fraudulent Lawsuits") against the property owners of the Accident Sites and/or the property owners' insurers (collectively, the "Victims").

5.    The Fraudulent Lawsuits did not disclose that the Patients had either deliberately fallen or never fallen at the Accident Sites.  Instead, the Fraudulent Lawsuits claimed that the Patients' injuries resulting from the falls were solely caused by the negligence of the owners of the Accident Sites (i.e., the Victims).  Scheme participants instructed the Patients to claim that they had sustained injuries to particular areas of their bodies, including the knees, shoulders, and/or back — body parts that, if injured, reaped higher damage awards in personal injury lawsuits.

6.    GEORGE CONSTANTINE, the defendant, was one of the primary Lawyers who filed Fraudulent Lawsuits during the course of the Fraud Scheme.  As noted above, in or around 2015, certain members of the Scheme, including SADY RIBEIRO and ANDREW DOWD, the defendants, joined a separate conspiracy that operated in

substantially the same way as the original conspiracy. The primary Lawyer who filed Fraudulent Lawsuits during the course of the second conspiracy was MARC ELEFANT, the defendant. In total, CONSTANTINE and ELEFANT filed hundreds of Fraudulent Lawsuits.

**IV.  Medical Treatment to Substantiate Fraudulent Lawsuits**

7.    Members of the Fraud Scheme referred the Patients to particular MRI facilities as well as to certain doctors, including ANDREW DOWD and SADY RIBEIRO, the defendants. These doctors almost invariably recommended that the Patients undergo surgery, irrespective of medical need.

8.    In order to obtain MRI referrals, and to substantiate their Fraudulent Lawsuits, the Patients were instructed to receive ongoing treatment from a chiropractor.

9.    In addition, Fraud Scheme participants encouraged Patients to attend physical therapy sessions in order to create the appearance of serious bodily injury. In a March 2015 email, one of the Scheme organizers explained to the owner of a litigation funding company that funded medical treatment for many of the Patients, that having Patients attend physical therapy sessions was necessary "when it comes to painting a picture of the client being hurt."

10.   The Patients were informed that if they intended to continue with their Fraudulent Lawsuits, they would need to

4

undergo surgeries to increase the value of the Fraudulent Lawsuits. The medical procedures included discectomies; spinal fusions; knee and shoulder surgeries; and non-surgical epidural injections. At least one Patient who underwent a surgery as part of the Fraud Scheme was told after awaking from general anesthesia that she almost died during the surgery. As an incentive to submit to these surgeries, the defendants and their co-conspirators usually arranged for payments, in the form of loans, to be made to the Patients each time they had surgery — typically between $1,000 and $1,500 per surgery ("Post-Surgery Payments"). Patients generally were told to undergo two surgeries.

11. Doctors in the Fraud Scheme, including ANDREW DOWD and SADY RIBEIRO, the defendants, were expected to, and in fact did, conduct these surgeries regardless of the legitimate medical needs of the Patients. For example:

a. In a March 2016 email, before DOWD examined the shoulder of a particular Patient who had staged a trip-and-fall accident ("Patient-2"), one of the Scheme organizers asked DOWD to "write us an additional report today stating that [Patient-2's] Lt. shoulder has worsened [so that I can] book this surgery for you." DOWD provided the requested report and recommended that Patient-2 undergo arthroscopic surgery.

5

b.   In an August 2015 email from RIBEIRO to the owner of a litigation funding company, in which RIBEIRO described the services that he performed, RIBEIRO wrote, "I will play very honest 'game' with you . . . I see the patient and I generate a very good dictation that justifies the treatment-there is a cost for that and I hope a profit."

12.  Members of the Fraud Scheme often recruited individuals who were extremely poor as Patients — individuals desperate enough to submit to surgeries in exchange for the small Post-Surgery Payments.  For example, it was common for Patients to ask for food when they would appear for their intake meetings with the Lawyers.  Many of the Patients did not have sufficient clothing to keep them warm during the wintertime and had poor-quality shoes.  Members of the Fraud Scheme also recruited Patients who were drug addicts.  It was also common for Scheme participants to recruit Patients from homeless shelters in New York City.

13.  Because most Patients did not have the means to pay for transportation, members of the Scheme transported the Patients to their various medical and legal appointments. Scheme participants frequently dropped off carloads of Patients at a time at these appointments.

## V.    Use of Funding Companies

14.  As explained above, as an inducement to undergo
surgeries, the Patients were offered financial incentives,
typically $1,000 loans after they completed their surgeries
(i.e., the Post-Surgery Payments), as well as a percentage of
any settlement payments from their Fraudulent Lawsuits.  As
noted above, *see supra* ¶ 9, Patients typically were convinced to
submit to two surgeries to maximize the value of their
Fraudulent Lawsuits.

15.  The Patients' legal and medical fees were usually paid
for by litigation funding companies (the "Funding Companies"),
even if the Patient maintained medical coverage through an
insurance company or a government-subsidized program.  The
Funding Companies also paid Fraud Scheme organizers and
participants referral fees, typically $1,000 to $2,500, for each
Patient who signed a funding agreement.  In exchange for funding
Patients' medical and legal costs, the Funding Companies charged
the Patients high interest rates, sometimes up to 50% on medical
loans and up to 100% on personal loans.  The interest rates were
so high that oftentimes the majority (if not all) of the
proceeds that were awarded in the Fraudulent Lawsuits were paid
to the Funding Companies, Lawyers, doctors, and Fraud Scheme
organizers, with the Patients receiving a much smaller
percentage of the remaining recovery.

7

**VI.  Harm to Victims as a Result of the Fraud Scheme**

16.  During the Fraud Scheme, GEORGE CONSTANTINE, MARC
ELEFANT, ANDREW DOWD, and SADY RIBEIRO, the defendants, together
with others known and unknown, attempted to defraud the Victims
of more than $31 million.

**VII. Relevant Persons**

17.  At all relevant times to this Indictment, GEORGE
CONSTANTINE, the defendant, was an attorney who represented
hundreds of Patients and filed Fraudulent Lawsuits on their
behalf.  In total, settlements from lawsuits filed by
CONSTANTINE that were referred by Fraud Scheme participants
exceeded $20 million, and CONSTANTINE collected more than $5
million in legal fees.

18.  At all relevant times to this Indictment, MARC
ELEFANT, the defendant, was an attorney who represented hundreds
of Patients and filed Fraudulent Lawsuits on their behalf.

19.  At all relevant times to this Indictment, ANDREW DOWD,
the defendant, was an orthopedic surgeon who performed surgeries
on the Patients.  During the course of the Fraud Scheme, DOWD
performed hundreds of knee and shoulder surgeries on Patients,
earning approximately $9,500 per surgery.

20.  At all relevant times to this Indictment, SADY
RIBEIRO, the defendant, was a pain management doctor and surgeon
who performed back surgeries, among other medical procedures, on

the Patients.  RIBEIRO paid Fraud Scheme participants cash
kickbacks in exchange for patient referrals and, during the
course of the Scheme, treated nearly 200 Patients.

### STATUTORY ALLEGATIONS

21.  From at least in or about January 2013, up to and
including in or about April 2018, in the Southern District of
New York and elsewhere, GEORGE CONSTANTINE, ANDREW DOWD, and
SADY RIBEIRO, the defendants, and others known and unknown,
willfully and knowingly, did combine, conspire, confederate, and
agree, together and with each other, to violate Title 18, United
States Code, Sections 1341 and 1343.

22.  It was a part and object of the conspiracy that GEORGE
CONSTANTINE, ANDREW DOWD, and SADY RIBEIRO, the defendants, and
others known and unknown, willfully and knowingly, having
devised and intending to devise a scheme and artifice to
defraud, and for obtaining money and property by means of false
and fraudulent pretenses, representations, and promises, for the
purpose of executing such scheme and artifice, would and did
place in a post office and authorized depositories for mail
matter, matters and things to be sent and delivered by the
Postal Service, and did deposit and cause to be deposited
matters and things to be sent and delivered by private and
commercial interstate carriers, and would and did take and
receive therefrom, such matters and things, and would and did

9

cause to be delivered by mail and such carriers according to directions thereon, and at the places at which they were directed to be delivered by the person to whom they were addressed, such matters and things, in violation of Title 18, United States Code, Section 1341.

23.   It was further a part and object of the conspiracy that GEORGE CONSTANTINE, ANDREW DOWD, and SADY RIBEIRO, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349)

### COUNT TWO
### (Mail Fraud)

The Grand Jury further charges:

24.   The allegations contained in paragraphs 1 through 20 of this Indictment are repeated and realleged as if fully set forth herein.

10

25.  From at least in or about January 2013, up to and
including in or about April 2018, in the Southern District of
New York and elsewhere, GEORGE CONSTANTINE, ANDREW DOWD, and
SADY RIBEIRO, the defendants, willfully and knowingly, having
devised and intending to devise a scheme and artifice to
defraud, and for obtaining money and property by means of false
and fraudulent pretenses, representations, and promises, for the
purpose of executing such scheme and artifice and attempting so
to do, did place in a post office and authorized depositories
for mail matter, matters and things to be sent and delivered by
the Postal Service, and did deposit and cause to be deposited
matters and things to be sent and delivered by private and
commercial interstate carriers, and did take and receive
therefrom, such matters and things, and did cause to be
delivered by mail and such carriers according to the directions
thereon, and at the places at which they were directed to be
delivered by the person to whom they were addressed, such
matters and things, to wit, CONSTANTINE, DOWD, and RIBEIRO
caused correspondence and financial payments to be mailed to
attorneys and other individuals and entities in the Bronx and

Manhattan, New York, among other places, in furtherance of fraudulent lawsuits against businesses and insurance companies.

(Title 18, United States Code, Sections 1341 and 2.)

### COUNT THREE
### (Wire Fraud)

The Grand Jury further charges:

26.   The allegations contained in paragraphs 1 through 20 of this Indictment are repeated and realleged as if fully set forth herein.

27.   From at least in or about January 2013, up to and including in or about April 2018, in the Southern District of New York and elsewhere, GEORGE CONSTANTINE, ANDREW DOWD, and SADY RIBEIRO, the defendants, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, CONSTANTINE, DOWD, and RIBEIRO used their cellphones and email accounts to send communications to a litigation funding company located in

12

New Jersey in furtherance of fraudulent lawsuits against
businesses and insurance companies.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT FOUR
### (Conspiracy to Commit Mail and Fraud)

The Grand Jury further charges:

28.    The allegations contained in paragraphs 1 through 20
of this Indictment are repeated and realleged as if fully set
forth herein.

29.    From at least in or about 2015, up to and including at
least in or about April 2018, in the Southern District of New
York and elsewhere, MARC ELEFANT, ANDREW DOWD, and SADY RIBEIRO,
the defendants, and others known and unknown, willfully and
knowingly did combine, conspire, confederate, and agree,
together and with each other, to violate Title 18, United States
Code, Sections 1341 and 1343.

30.    It was a part and an object of the conspiracy that
MARC ELEFANT, ANDREW DOWD, and SADY RIBEIRO, the defendants, and
others known and unknown, willfully and knowingly, having
devised and intending to devise a scheme and artifice to
defraud, and for obtaining money and property by means of false
and fraudulent pretenses, representations, and promises, for the
purpose of executing such scheme and artifice, would and did
place in a post office and authorized depositories for mail

13

matter, matters and things to be sent and delivered by the
Postal Service, and did deposit and cause to be deposited
matters and things to be sent and delivered by private and
commercial interstate carriers, and would and did take and
receive therefrom, such matters and things, and would and did
cause to be delivered by mail and such carriers according to
directions thereon, and at the places at which they were
directed to be delivered by the person to whom they were
addressed, such matters and things, in violation of Title 18,
United States Code, Section 1341.

    31.  It was further a part and an object of the conspiracy
that MARC ELEFANT, ANDREW DOWD, and SADY RIBEIRO, the
defendants, and others known and unknown, willfully and
knowingly, having devised and intending to devise a scheme and
artifice to defraud and for obtaining money and property by
means of false and fraudulent pretenses, representations, and
promises, would and did transmit and cause to be transmitted by
means of wire, radio, and television communications in
interstate and foreign commerce, writings, signs, signals,
pictures, and sounds for the purpose of executing such scheme
and artifice, in violation of Title 18, United States Code,
Section 1343.

        (Title 18, United States Code, Section 1349)

**COUNT FIVE**
**(Mail Fraud)**

The Grand Jury further charges:

32.   The allegations contained in paragraphs 1 through 20 of this Indictment are repeated and realleged as if fully set forth herein.

33.   From at least in or about 2015, up to and including at least in or about April 2018, in the Southern District of New York and elsewhere, MARC ELEFANT, ANDREW DOWD, and SADY RIBEIRO, the defendants, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting so to do, did place and cause to be placed in a post office and authorized depositories for mail matter, matters and things to be sent and delivered by the Postal Service, and did deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, and did take and receive therefrom, such matters and things, and did cause to be delivered by mail and such carriers according to the directions thereon, and at the places at which they were directed to be delivered by the person to whom they were addressed, such matters and things, to wit, ELEFANT, DOWD, and RIBEIRO caused

15

correspondence and financial payments to be mailed to attorneys
and other individuals and entities in the Bronx and Manhattan,
New York, among other places, in furtherance of fraudulent
lawsuits against businesses and insurance companies.

(Title 18, United States Code, Sections 1341 and 2.)

## COUNT SIX
### (Wire Fraud)

The Grand Jury further charges:

34.   The allegations contained in paragraphs 1 through 20
of this Indictment are repeated and realleged as if fully set
forth herein.

35.   From at least in or about 2015, up to and including in
or about April 2018, in the Southern District of New York and
elsewhere, MARC ELEFANT, ANDREW DOWD, and SADY RIBEIRO, the
defendants, willfully and knowingly, having devised and
intending to devise a scheme and artifice to defraud, and for
obtaining money and property by means of false and fraudulent
pretenses, representations, and promises, did transmit and cause
to be transmitted by means of wire, radio, and television
communication in interstate and foreign commerce, writings,
signs, signals, pictures, and sounds for the purpose of
executing such scheme and artifice, to wit, ELEFANT, DOWD, and
RIBEIRO used their cellphones and email accounts to send
communications to a litigation funding company located in New

16

Jersey in furtherance of fraudulent lawsuits against businesses and insurance companies.

(Title 18, United States Code, Sections 1343 and 2.)

## FORFEITURE ALLEGATIONS

36.  As a result of committing the offenses alleged in Counts One, Two, and Three of this Indictment, GEORGE CONSTANTINE, ANDREW DOWD, and SADY RIBEIRO, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from, proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

37.  As a result of committing the offenses alleged in Counts Four, Five, and Six of this Indictment, MARC ELEFANT, ANDREW DOWD, and SADY RIBEIRO, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from, proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

17

### Substitute Assets Provision

38.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

        a.   cannot be located upon the exercise of due diligence;

        b.   has been transferred or sold to, or deposited with, a third person;

        c.   has been placed beyond the jurisdiction of the Court;

        d.   has been substantially diminished in value; or

        e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

                (Title 18, United States Code, Section 981;
            Title 21, United States Code, Section 853; and
             Title 28, United States Code, Section 2461.)

_____
Foreperson

_____
AUDREY STRAUSS
United States Attorney

18

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

**v.**

**GEORGE CONSTANTINE,**
**MARC ELEFANT,**
**ANDREW DOWD, and**
**SADY RIBEIRO,**

**Defendants.**

### SEALED INDICTMENT

21 Cr. _____

(18 U.S.C. §§ 1349, 1341, 1343, and 2.)

AUDREY STRAUSS
United States Attorney

A TRUE BILL

_____
Foreperson

8/23/21  Filed indictment under seal.
Arrest warrants issued for
all defendants.

KM Fox
USMJ